**LEVITT & SLAFKES, P.C.**
515 Valley Street
Suite 140
Maplewood, NJ 07040
T: (973) 313-1200
F: (973) 313-1240
E: blevitt@lsbankruptcylaw.com
By: Bruce H. Levitt, Esq.
*Attorneys for Plaintiff George Makhoul*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE MAKHOUL,<br><br>        Plaintiff,<br><br>v.<br><br>CITIMORTGAGE, INC.; SAFEGUARD PROPERTIES, LLC,<br><br><br>        Defendants. | CASE NO.:<br><br>JUDGE:<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, George Makhoul, by and through counsel, hereby states for his Complaint against the Defendants, CitiMortgage, Inc. and Safeguard Properties, LLC as follows:

### NATURE OF THE CASE

1.   Safeguard Properties, LLC contracts with mortgage lending and servicing institutions, including CitiMortgage, Inc. to conduct services on properties located in the State of New Jersey and throughout the country that are subject to loans owned, held, or serviced by lending or servicing institutions.

2.   Specifically, Safeguard Properties, LLC is hired by lending and servicing institutions to: (1) provide the mortgage

lender or servicer's contact information to delinquent borrowers; (2) determine the occupancy status of properties by conducting exterior and interior inspections; (3) secure properties deemed vacant or abandoned by Safeguard by forcibly entering the property to change locks; (4) winterize properties deemed vacant or abandoned by Safeguard; (5) remove personal property from within the properties; and (6) provide miscellaneous other property preservation services.

3.     Safeguard Properties, LLC performs these property preservation services based on instructions from, and acts as the agent of, clients such as CitiMortgage, Inc.

4.     Safeguard Properties, LLC engages in a course of conduct whereby it wrongfully and forcibly enters borrowers' properties prior to the completion of foreclosure to perform destructive and disruptive acts, including, but not limited to, destroying, removing and replacing existing locks on a borrower's home, damaging property inside the home, and removing the borrower's personal property from the home.

5.     Safeguard Properties, LLC and CitiMortgage, Inc.'s conduct in this action resulted in damage to and/or the destruction of Plaintiff George Makhoul's real and personal property, and interference with his full use and enjoyment of his real and personal property.

6.    Safeguard Properties, LLC's conduct and practices in this action constitute trespass to Plaintiff George Makhoul's real property, trespass to his personal property, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and invasion of privacy.

7.    CitiMortgage, Inc.'s conduct in this action constitutes breach of contract, breach of the implied covenant of good faith and fair dealing, trespass to Plaintiff George Makhoul's real property, trespass to his personal property, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, invasion of privacy, and violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("CFA").

## PARTIES

8.    Plaintiff George Makhoul ("Plaintiff" or "Makhoul") is the owner of residential real property located at and commonly known as 13 Sunrise Circle, Holmdel, New Jersey 07733 (the "Property"), which he has occupied as his primary principal residence at all times relevant to this Complaint.

9.    Upon information and belief, Defendant CitiMortgage, Inc. ("CitiMortgage") is an affiliate of Citibank, N.A., with its principal place of business at 1000 Technology Drive, O'Fallon, Missouri 63368.

10.   Upon information and belief, CitiMortgage services mortgages on behalf of Citibank, N.A. in the State of New Jersey

and throughout the country.  CitiMortgage is the current servicer of a promissory note executed by Makhoul and of a mortgage on the Property that secures said note.  CitiMortgage has serviced the mortgage at all times relevant to this Complaint.

11.  For the purposes of this Complaint, any references to CitiMortgage shall mean such acts and practices that were performed by CitiMortgage, its employees, representatives, agents, and all persons or entities directly or indirectly under CitiMortgage's control.

12.  Upon information and belief, Safeguard Properties, LLC ("Safeguard") is a Delaware limited liability company, with its principal place of business at 7887 Safeguard Circle, Valley View, Ohio 44125.

13.  Safeguard is the nation's largest privately-held mortgage field services provider, and transacts business in the State of New Jersey and throughout the country.  Safeguard provides property inspection and preservation services for homes located in New Jersey that are in default under the terms of the loan agreement.

14.  For the purposes of this Complaint, any references to Safeguard shall mean such acts and practices that were performed by Safeguard, its employees, representatives, agents, subcontractors and all persons or entities directly or indirectly under Safeguard's control.

4

## JURISDICTION AND VENUE

15.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).  Plaintiff is a citizen of New Jersey, and the two Defendants are citizens of different states.  The amount in controversy in this action exceeds $75,000.00.

16.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as the Plaintiff resides, and the Property is located, within the State of New Jersey.

## BACKGROUND REGARDING SAFEGUARD'S BUSINESS PRACTICES AND CONDUCT

17.  For the purposes of this Complaint, "default properties" shall refer to properties where the borrower is in default on their mortgage, but no foreclosure has been initiated.

18.  For the purposes of this Complaint, properties "pre-foreclosure" shall refer to properties where foreclosure has been initiated, but not completed.

19.  For the purposes of this Complaint, "foreclosed properties" shall refer to properties where foreclosure has been completed and the properties have been sold.

### *Safeguard's Unfair and Deceptive Business Practices*

20.  Safeguard provides property inspection and preservation services for default, pre-foreclosure and foreclosed properties.

21.  On its website, Safeguard advertises its services to potential clients as follows:

> Safeguard leads the industry in delivering a full spectrum of inspection, maintenance, preservation, property registration, repairs and rehab services on vacant, defaulted and foreclosed properties.
>
> What distinguishes Safeguard is our commitment to delivering excellent customer service and performing at the highest levels of quality, timeliness and cost-effectiveness. Our investment in technology supports that commitment, with faster and more accurate property updates and data-gathering capabilities that inform our clients' and our own decision-making processes.
>
> Through a process of ongoing training and rigorous quality control, both for our national vendor network and our internal staff, we measure and monitor all aspects of service delivery to assure that we continuously meet or exceed industry guidelines and client expectations.

www.safeguardproperties.com/Services.aspx (last accessed June 7, 2018).

22. Safeguard advertises its property inspection services to potential clients as follows:

> As a first line of defense, timely and accurate property inspections provide critical information about the condition and occupancy status of a property so that steps can be taken to secure and protect it. Through early detection when issues and damages occur, properties sustain fewer and less severe damages, saving money and protecting their condition and value.
>
> Safeguard offers a full range of inspections, including exterior occupancy checks, contact attempts with door hangers, and full interior inspections.

http://www.safeguardproperties.com/Services/Property_Inspections

.aspx (last accessed June 7, 2018).

   23.  Safeguard advertises its property preservation services

to potential clients as follows:

> Safeguard works on behalf of loan servicers
> and through its national vendor network to
> keep vacant properties secure, safe and well-
> maintained inside and out. All work performed
> follows applicable investor and insurer
> guidelines. Our contractors evaluate and
> report potential damages or issues so they can
> be addressed in a timely and cost-effective
> manner. Safeguard assists its clients every
> step of the way, from default through
> foreclosure and conveyance.

http://www.safeguardproperties.com/Services/Property_Preservatio

n.aspx (last accessed June 7, 2018).

   24.  Safeguard's property preservation services include

"securing" properties, which Safeguard advertises to potential

clients on its website as follows:

> Once an inspection determines that a property
> is vacant, Safeguard takes steps to protect
> it. A contractor will secure the property and
> perform a lock change according to investor or
> insurer guidelines. If the property is pre-
> foreclosure, the lock will be changed on a
> secondary door when possible. Post-
> foreclosure, all locks will be changed.

http://www.safeguardproperties.com/Services/Property_Preservatio

n/Securing.aspx (last accessed June 7, 2018).

25.  Safeguard's property preservation services also include "debris removal," which Safeguard advertises to potential clients on its website as follows:

> Interior and exterior debris that creates a potential health, safety or infestation risk, or that may result in a code violation, is routinely removed from properties, both pre- and post-foreclosure.  Once a property has gone through foreclosure, all debris inside and out, hazardous and non-hazardous will be removed.  Interior debris is removed per investor guidelines, and exterior debris is taken to a licensed dumping facility. Personal items left in the property remain until clients provide specific instructions or a personal property eviction is ordered, generally once the property has moved through foreclosure.

http://www.safeguardproperties.com/Services/Property_Preservatio n/Debris_Removal.aspx (last accessed June 7, 2018).

### *Safeguard's Retention of Subcontractors*

26.  Upon information and belief, Safeguard performs its services through a network of subcontractors trained and supervised by Safeguard through a common set of practices.

27.  Upon information and belief, once a home is deemed "vacant" or "abandoned," Safeguard instructs its subcontractors to forcibly enter the home and perform services, such as securing the home by boarding up the doorway or windows, turning off utilities to the home, and placing lockboxes or padlocks on the doors to the home.

28.   Upon information and belief, such common instructions also include that the subcontractor should forcibly enter the home to perform destructive acts, including destroying and removing existing lock(s) on a home, damaging doors or smashing windows to gain entry to a home, and damaging, destroying and/or removing personal property found in the home.

29.   Upon information and belief, Subcontractors perform these servicers as agents of Safeguard and pursuant to common orders and directives from Safeguard.

30.   Upon information and belief, despite extensive use of subcontractors, Safeguard has no common practice of adequately training or supervising its subcontractors.

31.   Upon information and belief, Safeguard has no common practice of screening its subcontractors' employees by way of reviewing qualifications or performing background checks that would uncover any criminal history.

### *Safeguard's Unlawful and Improper Conduct is Widespread*

32.   Safeguard has a widespread practice of forcible entry, resultant damage, removal of personal property from homes, and the denial of the homeowner's full use and enjoyment of their home and personal property.

33.   Various news reports detail specific examples of Safeguard's practices.

34.  In a 2012 article, borrowers reported returning home following Safeguard's forcible entry to find that their personal possessions had been destroyed and scattered across their front yard, and the family pet was missing.  *See* Exhibit "A".

35.  In a 2013 article entitled "Safeguard Properties Internal Documents Reveal Rampant Complaints of Thefts, Break-ins", borrowers reported returning home to find that Safeguard had changed the locks to their homes and stolen their personal property.  *See* Exhibit "B".  The article also offers further detail into the breadth and depth of Safeguard's practices through a detailed account of a former Safeguard complaint department employee, who "gained a starkly different perspective on his company's pursuits as allegations of incompetence, malevolence and larceny rolled in day after day."  Exhibit "B" at p. 2.  As for Safeguard's practice for responding to consumer complaints:

> [The employee] said...[t]he most common strategy...was to stall – ignore the claim for as long as possible with the hope that the person who called in would give up.  "We would wear them down with paperwork and make them go away," he said.

*Id.* at p. 3.

36.  In another 2013 article, reporters found sixty-eight (68) lawsuits filed against Safeguard in twenty-seven (27) different states.  The article also discusses Safeguard's forcible

entry into borrowers' homes, as well as damage to and the theft of borrowers' personal property. *See* Exhibit "C".

37. These articles are only a small sample of countless similar stories evidencing Safeguard's unfair business practices and conduct.

### *The Illinois Attorney General's Action Against Safeguard*

38. In September of 2013, Safeguard was sued by the Attorney General's Office of the State of Illinois (the "Illinois Action") for the same unfair and deceptive business practices and conduct targeted by the present action. *See* Exhibit "D".

39. The Illinois Action discusses Safeguard's business practices and conduct in painstaking detail, which have led to two hundred (200) complaints from Illinois consumers against Safeguard concerning the unlawful removal of personal property. *Id.* at ¶¶ 51-52.

40. Illinois Attorney General Lisa Madigan described the Illinois Action as follows: "This case shows the lengths that banks and their service providers will go to abuse and intimidate borrowers in foreclosure[.] ... This company [Safeguard] was illegally breaking into people's homes, removing all their possession and locking them out.  It is a homeowner's worst nightmare." Exhibit "E".

41. The Illinois Action resulted in a settlement whereby Safeguard agreed to pay the sum of $1,000,000.00, nearly all of

which was paid to Illinois residents who filed complaints over Safeguard's business practices and conduct.  Exhibit "F".

42.  Under the settlement, Safeguard also agreed to "overhaul its business practices to ensure that the company only secures a property that is vacant based on objective standards."  *Id*. Specifically, Safeguard agreed to "follow 40 operating standards in conducting inspections and other services relating to Illinois properties set by [the Illinois Attorney General's Office] to ensure homeowners' rights are protected."  These standards included the following:

a. "Inspectors must support their inspections with photographs and an affidavit."

b. "Safeguard is prohibited from misrepresenting the rights of occupants that are allowed to remain in their home even though they might be behind on their mortgage and in foreclosure."

c. "The company must increase its oversight and quality control of its subcontractors."

d. "Safeguard must maintain a 24-hour hotline for fielding consumer complaints."

e. "The company is prohibited from removing non-perishable and non-hazardous personal property prior to foreclosure unless it has a court order, and if Safeguard makes a mistake, it must restore a consumer's possession of the

home, restore utility service, and return or reimburse any personal property that has been removed."

*Id.*

43.   Illinois Attorney General Lisa Madigan described the settlement as follows: "I am pleased that this settlement will provide some compensation for the nightmare they caused these homeowners and that it will ensure that Safeguard does not employ these brazen practices moving forward."   *Id.*

### *The Maryland Attorney General's Action Against Safeguard*

44.   Following the Illinois Action, the Attorney General's Office of the State of Maryland sued Safeguard for the same unfair and deceptive business practices and conduct targeted by the present action.

45.   On August 28, 2018, Maryland Attorney General Brian Frosh announced a settlement with Safeguard "resolving claims that the company's inadequate policies and procedures resulted in Marylanders being wrongfully locked out of their homes or having their property damages and belongings taken."   Exhibit "G".

46.   Under the settlement, Safeguard agreed to pay the sum of $167,000.00 in restitution to Maryland residents harmed by Safeguard's business practices and conduct.   *Id.*

47.   Under the settlement, Safeguard also agreed to enact specific reforms, which included the following:

a. "Implementing stringent background check requirements for employees and vendor agents, including evaluating prior misdemeanor convictions and prohibiting work by those with relevant felony convictions;"

b. "Assuring its vendors that they will not be penalized if they report in good faith that they don't know whether a property is occupied;" and

c. "Prohibiting the removal of non-hazardous personal property prior to foreclosure, except pursuant to court order."

*Id.*

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

48.  Plaintiff restates and incorporates by reference each of the statements and allegations contained in the preceding paragraphs in their entirety.

49.  On March 27, 2003, Plaintiff executed and delivered to First National Bank of Nassau County ("First National") a promissory note (the "Note") securing the sum of $505,000.00.  To secure the loan, on March 27, 2003, Plaintiff also executed a mortgage to First National (the "Mortgage").

50.  Upon information and belief, by assignment of mortgage dated April 3, 2003, First National assigned the Mortgage to ABN AMRO Mortgage Group, Inc. ("ABN").

14

51.  Upon  information  and  belief,  CitiMortgage  is  the
successor by merger to ABN.

52.  The  Mortgage  contains  a  form  provision  allowing  the
lender  to,  in  certain  situations,  take  actions  reasonable  and
appropriate to protect its interest in the Property.

53.  On August 18, 2015, CitiMortgage filed a Complaint in
foreclosure against Plaintiff (the "foreclosure litigation").

54.  On October 1, 2015, Plaintiff filed a Complaint against
CitiMortgage in the United States District Court for the District
of  New  Jersey  (the  "District  Court  litigation"),  alleging
violations  of  the  Fair  Debt  Collection  Practices  Act,  15  U.S.C.
§ 1692, *et seq*. ("FDCPA").

55.  On April 20, 2016, CitiMortgage and Plaintiff entered
into  a  Compromise,  Settlement  and  Release  Agreement  (the
"Settlement Agreement"), which resolved the foreclosure litigation
and the District Court litigation.

56.  Pursuant  to  the  Settlement  Agreement,  CitiMortgage
agreed to not pursue a new foreclosure action for a period of six
(6) months so that Plaintiff could pay off the loan or retain the
Property.  The parties understood that Plaintiff's primary goal
was to pay off the loan by selling the Property because of the
substantial equity in the Property.

57.  On May 5, 2016, CitiMortgage and Plaintiff stipulated
and agreed to dismiss the foreclosure litigation.

58.  On  May  9,  2016,  Plaintiff,  through  prior  counsel, voluntarily dismissed the District Court litigation.

59.  Thereafter, on or about May 23, 2016, Plaintiff returned home one evening and discovered a sticker attached to the outside of the front door to his home, which read, in pertinent part:

> We found this property to be vacant.  This information will be reported to the mortgage holder.  The mortgage holder has the right and duty to protect this property.  The property may be rekeyed and/or winterized within 3 days.  If this property is **NOT VACANT**, please contact Safeguard Properties at **877-340-8482.**

Exhibit "H".

60.  As  instructed,  Plaintiff  contacted  Safeguard  via telephone at 877-340-8482 and informed them that the Property was not vacant and to contact CitiMortgage for further clarification because CitiMortgage was aware that the Property was not vacant.

61.  When Plaintiff returned home from work on June 13, 2016, he found two individuals who were in the process of breaking into his  home.   The  supervisor,  Carlos  Ramos,  stated  that  he  was employed  by  Safeguard  and  had  been  instructed  by  the  "bank"  to change  the  locks  on  his  house.   Plaintiff  advised  Mr.  Ramos  that he owned the house and continued to reside at the Property.

62.  Mr.  Ramos  also  stated  that  he  contacted  his  supervisor when he first entered the Property to inform her that the Property did  not  appear  to  be  vacant  because:  (1)  there  was  food  in  the refrigerator;  (2)  there  was  clothing  in  the  closets;  and  (3)  there

were two cars in the garage.  However, the supervisor instructed Mr. Ramos to proceed.

63.  In the process of carrying out CitiMortgage's instructions, Safeguard caused extensive damage to Plaintiff's home and personal property, including the following:

    a. Breaking and removing a lock on a gate to reach the rear entrance of the house and replacing Plaintiff's lock with a padlock.

    b. Breaking the frame of a wooden patio double door, near the locking mechanism, in an attempt to pry the door open.

    c. Drilling through the wooden patio double door, near the locking mechanism, to open the door and replacing Plaintiff's lock with a new lock.  The new lock did not function properly because Safeguard's employees damaged the doorframe.

    d. Installing a lock-box and only providing the code to the lock-box after Plaintiff threated to contact the police department.

    e. Breaking and removing the lock on the front door and replacing Plaintiff's lock.

    f. Installing padlocks on Plaintiff's garage doors, causing significant damage to the tracks, rollers and drywall ceiling.  The padlocks rendered the garage inoperable.

The damage to the ceiling exposed insulation and interfered with the water lines for the automatic sprinkler system, which resulted in leaks and water damage.

64. Plaintiff later discovered that Safeguard's employees left his broken lock in the kitchen, and that Safeguard's employees helped themselves to food and drink from his refrigerator.

65. Plaintiff advised Safeguard's employees that he had to contact the police to report the break-in and damage they had caused. Safeguard's employees asked Plaintiff to wait one day so that CitiMortgage or Safeguard could contact him to discuss the situation, and indicated that CitiMortgage or Safeguard would reimburse him for the damage they had caused.

66. Plaintiff did not receive any communication from CitiMortgage or Safeguard on June 14, 2016.

67. On June 15, 2016, Plaintiff reported the incident to the Holmdel Township Police Department. Exhibit "I".

68. By letter dated June 17, 2016, Plaintiff notified CitiMortgage of the break-in and resulting damage that occurred on June 13th, and asked CitiMortgage to contact his attorney. Exhibit "J".

69. CitiMortgage acknowledged Plaintiff's June 17th correspondence by letters dated June 23rd and June 24th, both of

18

which stated that his "letter will be reviewed and processed timely." Exhibit "K".

70. CitiMortgage further acknowledged Plaintiff's June 17th correspondence by letter dated July 16th, which stated that CitiMortgage had "escalated [Plaintiff's] request." Exhibit "L".

71. By e-mail dated July 18, 2016, Plaintiff's homeowners insurance company informed Plaintiff that it had been advised by CitiMortgage that the Property "may be vacant." Exhibit "M".

72. Plaintiff immediately sent a letter to his homeowners insurance company, which stated that he has resided at the property for "nearly 15 years" and that the Property "is not vacant." A copy of the letter was forwarded to CitiMortgage. Exhibit "N".

73. By letter dated July 19, 2016, CitiMortgage informed Plaintiff that "Safeguard Properties has received [Plaintiff's] correspondence. Safeguard has also been in contact with your attorney." The letter also stated that "[b]ased on the completed research, CitiMortgage trusts this letter has addressed your concerns on the above loan." Exhibit "O".

74. By letter dated July 29, 2016, CitiMortgage informed Plaintiff that it "anticipate[d] resolving [his] case soon and will reach out to [him] again with a resolution." Exhibit "P".

75. On August 1, 2016, Safeguard broke into Plaintiff's home, causing further damage in the process, and affixed another sticker to Plaintiff's door. Refer to Exhibit "J". Specifically,

Plaintiff had replaced the front door's lock cylinder after the June 13, 2016 break-in. Safeguard removed Plaintiff's new lock cylinder from the front door and installed a different lock cylinder, without leaving keys to the new lock.

76.  By letter dated August 2, 2016, Plaintiff again advised CitiMortgage and Safeguard that he resided at the Property, and requested they "cease and desist from breaking and entering [his] house under the pretext that it is vacant and abandoned." Exhibit "Q".

77.  On August 31, 2016, Safeguard broke into Plaintiff's home, causing further damage in the process, and affixed another sticker to Plaintiff's door. Refer to Exhibit "J". Specifically, Safeguard attempted to open Plaintiff's garage doors by tampering with the electronic keypad openers but were unsuccessful because Plaintiff had disabled the keypads. Undeterred, Safeguard entered Plaintiff's home by prying open the already damaged rear patio double door. Once inside, Safeguard attempted to manually open the garage doors, which caused further damage to the tracks, rollers and drywall ceiling, and left pieces of the drywall ceiling and insulation scattered across the garage floor. The damage to the ceiling exposed insulation and interfered with the water lines for the automatic sprinkler system, which resulted in leaks and water damage.

78.  By letter dated September 1, 2016, Plaintiff again advised CitiMortgage and Safeguard that he resided at the Property, and requested they cease and desist from breaking into and entering his home.  Exhibit "R".  This letter went unanswered.

79.  By letter dated September 6, 2016, CitiMortgage stated the following:

> This letter is in response to your inquiry dated August 2, 2016 and received in the Default Research and Litigation Department of CitiMortgage Inc. (CMI) on August 10, 2016.
>
> CitiMortgage, Inc. (CMI) records show that on July 19, 2016, a letter was sent to you to advise you that Safeguard has been in contact with your attorney.  Enclosed please find a copy of the letter for your convenience.  For additional questions, please contact Safeguard at 800-852-8306.
>
> Based on the completed research, CitiMortgage trusts this letter has addressed your concerns on the above loan.

Exhibit "S".

80.  However, as of September 6, 2016, Plaintiff's prior counsel had not been contacted by Safeguard.

81.  By e-mail and letter dated September 30, 2016, Safeguard contacted Plaintiff's prior counsel to request additional information regarding the June 13, 2016 break-in.  Exhibit "T".

82.  By e-mail dated October 7, 2016, Safeguard informed Plaintiff's prior counsel that Plaintiff's claim had been submitted to Safeguard's insurance carrier.  Exhibit "U".

83.   After   October   7,   2016,   neither   Safeguard   nor CitiMortgage contacted Plaintiff or his prior counsel regarding the June 13, 2016 break-in and damage or for any of the subsequent break-ins and damage.

84.   Between April 14 and 16 of 2017, Safeguard broke into Plaintiff's home while he was out of town and caused further damage.   When Plaintiff returned, he observed that Safeguard:

   a. Broke  a  chain  and  padlock  on  the  rear  fence  of  the Property.

   b. Tampered with and deactivated the lock on the rear patio double door to gain entry to the home.

   c. Shut off all circuit breakers for the home.

   d. Tampered with the washer and dryer, which rendered them inoperable.

   e. Rummaged through each closet in the home.

   f. Moved Plaintiff's furniture.

85.   By letter dated April 17, 2017, Plaintiff again advised CitiMortgage that he resided at the Property, and requested that CitiMortgage and its agents cease and desist from breaking into and entering his home and causing considerable damage.   Exhibit "V".

86.   Six months later, CitiMortgage wrote to Plaintiff and again informed him that:

This letter is in response to your inquiries dated April 17, 2017 and received in the Default Mortgage Account Research Services Department of CitiMortgage Inc. (CMI) on April 27, 2017.

Thank you for contacting CitiMortgage. We received your correspondence in which you state you have previously advised CitiMortgage that your property is occupied. Additionally, you state CitiMortgage entered your property between the dates of April 14 to April 16 of 2017 and caused damage.

Our records do not support that CitiMortgage entered your property on the dates you indicated. Our records show, an external inspection was done on April 29, 2017, the property was reported to be vacant and CitiMortgage proceeded to cut the grass. We have enclosed a copy of the inspection report for your review.

We have advised our Property Preservation department that the property is occupied.

...

Based on the completed research, CitiMortgage trusts this letter has addressed your concerns on the above loan.

Exhibit "W".

87. The Property was not vacant on April 29, 2017, or at any other time relevant to this Complaint.

88. Plaintiff has resided at the Property at all times relevant to this Complaint.

89. CitiMortgage was aware that Plaintiff resided at the Property at all times relevant to this Complaint.

90.  As of June 13, 2016, Safeguard was aware that Plaintiff resided at the Property.

91.  CitiMortgage and Safeguard's conduct frustrated the primary purpose of the Settlement Agreement between CitiMortgage and Plaintiff.  Specifically, the repeated break-ins and resulting damage to Plaintiff's home and personal property prevented the sale of the Property, which the Settlement Agreement was intended to permit.

92.  The actions of CitiMortgage and Safeguard were neither reasonable nor appropriate.

93.  Safeguard acted as CitiMortgage's agent at all times relevant to this Complaint.

94.  On May 11, 2017, CitiMortgage filed a new Complaint in foreclosure.

95.  Plaintiff now faces the prospect of losing his home.

**COUNT ONE**
**(Intentional Infliction of Emotional Distress)**

96.  Plaintiff restates and incorporates by reference each of the statements and allegations contained in the preceding paragraphs in their entirety.

97.  Pursuant to a pattern and practice, CitiMortgage, through its agent Safeguard, intentionally or recklessly broke into Plaintiff's home without justification and caused

considerable damage to his personal property despite being provided notice that Plaintiff resided at the Property.

98. Specifically, CitiMortgage and Safeguard had actual knowledge that the Property was not vacant, and that Plaintiff continued to reside at the Property at all times relevant to this Complaint.

99. Additionally, CitiMortgage and Safeguard knew or had reason to know that they were not authorized to: (1) damage real or personal property; (2) destroy real or personal property; and (3) interfere with Plaintiff's full use and enjoyment of the Property.

100. CitiMortgage and Safeguard's conduct is extreme and outrageous and goes beyond all possible bounds of decency.

101. CitiMortgage and Safeguard's conduct was in deliberate disregard of the high degree of probability that Plaintiff would suffer from emotional distress.

102. Upon information and belief, the conduct and inactions set forth above are part of Safeguard's common business acts and practices.

103. Plaintiff has suffered embarrassment and ridicule due to the fact that CitiMortgage, through its agent Safeguard, has wrongfully broken into his home and damaged and/or destroyed his real and personal property.

104. CitiMortgage and Safeguard's actions have caused and continue to cause Plaintiff to suffer from severe emotional distress.

105. Plaintiff suffered economic damages as a proximate result of CitiMortgage and Safeguard's conduct including, without limitation: causing him to expend funds to repair damage caused by CitiMortgage and/or Safeguard, additional and unnecessary fees to his mortgage balance, and incurring attorney's fees.

106. Plaintiff suffered and continues to suffer non-economic damages as a proximate result of CitiMortgage and Safeguard's conduct including, without limitation: fear of further break-ins and damage to his real and personal property, fear of harm to his girlfriend and her daughter, anxiety, stress, lack of sleep, and an inability to focus.

**WHEREFORE**, Plaintiff prays for relief against Defendants CitiMortgage, Inc. and Safeguard Properties, LLC as follows:

A.   For actual damages;

B.   For punitive damages;

C.   For attorney's fees and costs of suit;

D.   For such other and further relief as this Court deems just and proper.

### COUNT TWO
### (Negligent Infliction of Emotional Distress)

107. Plaintiff restates and incorporates by reference each of the statements and allegations contained in the preceding paragraphs in their entirety.

108. CitiMortgage and Safeguard knew or should have known that Plaintiff would suffer serious mental distress if his home was wrongfully broken into and his personal property was damaged and/or destroyed.

109. Despite the reasonable foreseeability of Plaintiff's emotional distress, CitiMortgage, through its agent Safeguard, wrongfully broke into Plaintiff's home and damaged and/or destroyed his personal property on numerous occasions.

110. Additionally, CitiMortgage and Safeguard knew or had reason to know that they were not authorized to: (1) damage Plaintiff's real or personal property; (2) destroy Plaintiff's real or personal property; and (3) interfere with Plaintiff's full use and enjoyment of the Property.

111. Upon information and belief, the conduct and inactions set forth above are part of Safeguard's common business acts and practices.

112. Plaintiff has suffered embarrassment and ridicule due to the fact that CitiMortgage, through its agent Safeguard,

wrongfully broke into his home and damaged and/or destroyed his personal property.

113. Plaintiff suffered economic damages as a proximate result of CitiMortgage and Safeguard's conduct including, without limitation: causing him to expend funds to repair damage caused by CitiMortgage and/or Safeguard, additional and unnecessary fees to his mortgage balance, and incurring attorney's fees.

114. Plaintiff suffered and continues to suffer non-economic damages as a proximate result of CitiMortgage and Safeguard's conduct including, without limitation: fear of further break-ins and damage to his real and personal property, fear of harm to his girlfriend and her daughter, anxiety, stress, lack of sleep, and an inability to focus.

**WHEREFORE**, Plaintiff prays for relief against Defendants CitiMortgage, Inc. and Safeguard Properties, LLC as follows:

A.   For actual damages;

B.   For punitive damages;

C.   For attorney's fees and costs of suit; and

D.   For such other and further relief as this Court deems just and proper.

## COUNT THREE
### (Negligence)

115. Plaintiff restates and incorporates by reference each of the statements and allegations contained in the preceding paragraphs in their entirety.

116. CitiMortgage and Safeguard owe homeowners a general duty of reasonable care not to place those homeowners at foreseeable risk of harm through their conduct.

117. Specifically, CitiMortgage and Safeguard owe homeowners a duty of reasonable care not to place those homeowners at foreseeable risk of harm through their undertaking of property inspection and property preservation services.

118. CitiMortgage breached its duty of care to Plaintiff, a homeowner, by negligently, accidentally, or recklessly instructing Safeguard to perform property inspection and property preservation services with regard to the Property and Plaintiff's home.

119. Pursuant to a pattern and practice, Safeguard breached its duty of care to Plaintiff, a homeowner, by negligently, accidentally, or recklessly breaking into Plaintiff's home and causing considerable damage to his home and personal property.

120. Safeguard further breached its duty of care to Plaintiff, a homeowner, by failing to adequately train or supervise its subcontractors and/or agents, and through its lack of screening

its subcontractors and/or agents to determine qualifications and to uncover any criminal history.

121. CitiMortgage and Safeguard further breached their duties of care to Plaintiff because they knew or had reason to know they were not authorized to: (1) damage Plaintiff's real or personal property; (2) destroy Plaintiff's real or personal property; and (3) interfere with Plaintiff's full use and enjoyment of the Property.

122. CitiMortgage and Safeguard further breached their duties of care to Plaintiff through their failure to cease their conduct despite actual notice that the Property was occupied by Plaintiff, which caused further damage and destruction to his home and personal property.

123. CitiMortgage and Safeguard further breached their duties of care to Plaintiff through their failure to cease their conduct despite acknowledging receipt of Plaintiff's numerous letters requesting same, which caused further damage to his home and personal property.

124. Upon information and belief, the conduct and inactions set forth above are part of Safeguard's common business acts and practices.

125. Plaintiff suffered economic damages as a proximate result of Citi and Safeguard's breaches of their duties, including, without limitation: causing him to expend funds to repair damage

caused by CitiMortgage and/or Safeguard, additional and unnecessary fees to his mortgage balance, and incurring attorney's fees.

126. Plaintiff suffered and continues to suffer non-economic damages as a proximate result of Citi and Safeguard's breaches of their duties, including, without limitation: fear of further break-ins and damage to his real and personal property, fear of harm to his girlfriend and her daughter, anxiety, stress, lack of sleep, and an inability to focus.

**WHEREFORE,** Plaintiff prays for relief against Defendants CitiMortgage, Inc. and Safeguard Properties, LLC as follows:

A.   For actual damages;

B.   For punitive damages;

C.   For attorney's fees and costs of suit; and

D.   For such other and further relief as this Court deems just and proper.

## COUNT FOUR
### (Invasion of Privacy)

127. Plaintiff restates and incorporates by reference each of the statements and allegations contained in the preceding paragraphs in their entirety.

128. CitiMortgage and Safeguard intentionally interfered into Plaintiff's seclusion without his permission.

129. Pursuant to a pattern and practice, CitiMortgage, through its agent Safeguard, wrongfully broke into Plaintiff's home, damaged and/or destroyed his personal property, and interfered with his possessory interest in the Property despite being provided notice that the Property was occupied.

130. CitiMortgage and Safeguard knew or had reason to know they were not authorized to: (1) damage real or personal property; (2) destroy real or personal property; and (3) interfere with Plaintiff's full use and enjoyment of the Property.

131. CitiMortgage, through its agent Safeguard, continued to break into Plaintiff's home, damage and/or destroy his personal property, and invade his possessory interest in the Property despite knowledge that the break-ins were unreasonable and unjustified because Plaintiff occupied the Property.

132. CitiMortgage, its agent Safeguard, their employees, representatives and/or agents physically intruded on the Property on multiple occasions, despite multiple verbal and written requests from Plaintiff and his prior attorney to cease and desist, in order to forcibly gain entry to his home, change the locks and destroy and/or discard his personal property.

133. Upon information and belief, the conduct and inactions set forth above are part of Safeguard's common business acts and practices.

134.  Plaintiff suffered economic damages as a proximate result of CitiMortgage and Safeguard's conduct including, without limitation: causing him to expend funds to repair damage caused by CitiMortgage and/or Safeguard, additional and unnecessary fees to his mortgage balance, and incurring attorney's fees.

135. Plaintiff suffered and continues to suffer non-economic damages as a proximate result of CitiMortgage and Safeguard's conduct including, without limitation: fear of further break-ins and damage to his real and personal property, fear of harm to his girlfriend and her daughter, anxiety, stress, lack of sleep, and an inability to focus.

**WHEREFORE**, Plaintiff prays for relief against Defendants CitiMortgage, Inc. and Safeguard Properties, LLC as follows:

A.   For actual damages;

B.   For punitive damages;

C.   For attorney's fees and costs of suit; and

D.   For such other and further relief as this Court deems just and proper.

## COUNT FIVE
### (Trespass to Land)

136. Plaintiff restates and incorporates by reference each of the statements and allegations contained in the preceding paragraphs in their entirety.

137. Plaintiff is the owner of the Property.

138. The Mortgage contains a form provision allowing the lender to, in certain situations, take actions reasonable and appropriate to protect its interest in the Property.

139. However, CitiMortgage and Safeguard knew or had reason to know they were not authorized to: (1) damage real or personal property; (2) destroy real or personal property; and (3) interfere with Plaintiff's full use and enjoyment of the Property.

140. CitiMortgage, its agent Safeguard, their employees, representatives and/or agents' conduct in this action was neither reasonable nor appropriate.

141. CitiMortgage, its agent Safeguard, their employees, representatives and/or agents intentionally, unreasonably and forcibly entered the Property, intentionally and unreasonably damaged, destroyed and/or removed Plaintiff's personal property, and interfered with Plaintiff's full use and enjoyment of the Property.

142. CitiMortgage, its agent Safeguard, their employees, representatives and/or agents engaged in the above conduct without authorization or Plaintiff's permission.

143. Upon information and belief, the conduct and inactions set forth above are part of Safeguard's common business acts and practices.

**WHEREFORE**, Plaintiff prays for relief against Defendants CitiMortgage, Inc. and Safeguard Properties, LLC as follows:

A.   For actual damages;

B.   For punitive damages;

C.   For attorney's fees and costs of suit; and

D.   For such other and further relief as this Court deems
just and proper.

## COUNT SIX
### (Trespass to Chattels)

144. Plaintiff restates and incorporates by reference each of
the statements and allegations contained in the preceding
paragraphs in their entirety.

145. CitiMortgage, its agent Safeguard, their employees,
representatives and/or agents intentionally entered the Property
and damaged and destroyed Plaintiff's personal property.

146. Specifically, CitiMortgage, through its agent Safeguard,
caused extensive to Plaintiff's home and personal property,
including the following:

     a. Breaking and removing multiple locks, including the lock
to on the front and rear doors to the home, and replacing
those locks with padlocks.

     b. Breaking the frame of the rear door to the home, near
the locking mechanism, in an attempt to pry the door
open.

     c. Drilling through the rear door to the home, near the
locking mechanism, to open the door and replace the lock

with a new lock.  The new lock did not function properly because Safeguard's employees damaged the doorframe.

d. Installing padlocks on the garage doors, causing significant damage to the tracks, rollers and drywall, which rendered the garage inoperable.

147. The above conduct has deprived Plaintiff of the use of his personal property.

148. CitiMortgage, its agent Safeguard, their employees, representatives and/or agents engaged in the above conduct wholly without Plaintiff's permission.

149. Upon information and belief, the conduct and inactions set forth above are part of Safeguard's common business acts and practices.

**WHEREFORE**, Plaintiff prays for relief against Defendants CitiMortgage, Inc. and Safeguard Properties, LLC as follows:

A.   For actual damages;

B.   For punitive damages;

C.   For attorney's fees and costs of suit; and

D.   For such other and further relief as this Court deems just and proper.

**COUNT SEVEN**
**(Violation of the New Jersey Consumer Fraud Act)**

150. Plaintiff restates and incorporates by reference each of the statements and allegations contained in the preceding paragraphs in their entirety.

151. The New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* ("CFA"), renders it unlawful to use or employ any commercial practice, or to knowingly conceal, suppress, or omit any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate.

152. Plaintiff, CitiMortgage and Safeguard are "person[s]" as that term is defined in N.J.S.A. 56:8-1.

153. Plaintiff's relationship with CitiMortgage arose out of a "sale" as that term is defined in N.J.S.A. 56:8-1.

154. CitiMortgage contracted with Safeguard to provide property preservation services in connection with the Property.

155. CitiMortgage violated the CFA by engaging in unconscionable and deceptive commercial practices, including, without limitation:

    a. Entering into a settlement agreement with Plaintiff, whereby CitiMortgage dismissed pending foreclosure litigation and agreed to not pursue a new foreclosure action for a period of six (6) months so that Plaintiff

could retain the Property or pay off the loan, only to immediately contract with Safeguard with the intention of denying Plaintiff the full use and enjoyment of his real and personal property.

b. Unreasonably and unjustifiably instructing Safeguard to secure the Property, despite knowledge that it was occupied by Plaintiff.

c. Continuing to unreasonably and unjustifiably instruct Safeguard to secure the Property, despite notice that it was occupied by Plaintiff.

d. Unreasonably and unjustifiably damaging and/or destroying Plaintiff's real and personal property.

e. Unreasonably and unjustifiably invading Plaintiff's possessory interest in the Property.

f. Unreasonably and unjustifiably denying Plaintiff's full use and enjoyment of his real and personal property.

g. Failing to timely respond to Plaintiff's letters regarding the break-ins and related property damage.

h. Failing to provide any response to Plaintiff's other letter(s) regarding the break-ins and related property damage.

i. Failing to address the concerns raised in Plaintiff's letters regarding the break-ins and related property damage.

j. Failing to reimburse Plaintiff for the damage caused by CitiMortgage and Safeguard's conduct.

156. Safeguard violated the CFA by engaging in unconscionable commercial practices, including, without limitation:

a. Taking action to secure the Property despite knowledge that it was occupied by Plaintiff.

b. Taking further action to secure the Property despite actual notice that it was occupied by Plaintiff.

c. Unreasonably and unjustifiably damaging and/or destroying Plaintiff's real and personal property.

d. Unreasonably and unjustifiably invading Plaintiff's possessory interest in the Property.

e. Unreasonably and unjustifiably denying Plaintiff's full use and enjoyment of his real and personal property.

f. Failing to timely respond to Plaintiff's letters regarding the break-ins and related property damage.

g. Failing to address the concerns raised in Plaintiff's letters regarding the break-ins and related property damage.

h. Failing to reimburse Plaintiff for the damage caused by CitiMortgage and Safeguard's conduct.

157. CitiMortgage and Safeguard's conduct directly and proximately caused and continue to cause Plaintiff to suffer damage to his real and personal property, the fear of further break-ins

and damage to his real and personal property, the fear of harm to his girlfriend and her daughter, anxiety, stress, lack of sleep, an inability to focus, humiliation, emotional distress, additional and unnecessary fees to his mortgage balance, to expend funds to repair damage, and to incur attorney's fees.

**WHEREFORE**, Plaintiff prays for relief against Defendants CitiMortgage, Inc. and Safeguard Properties, LLC as follows:

A.   For actual damages;

B.   For treble damages;

C.   For attorney's fees and costs of suit; and

D.   For such other and further relief as this Court deems just and proper.

## COUNT EIGHT
### (Breach of Contract as to CitiMortgage)

158. Plaintiff restates and incorporates by reference each of the statements and allegations contained in the preceding paragraphs in their entirety.

159. The Mortgage was a binding contract between Plaintiff and First National.  The Mortgage was subsequently assigned to ABN.

160. CitiMortgage, as successor by merger to ABN, is obligated to honor the terms of the Mortgage.

161. Specifically, CitiMortgage had a duty to abide by the terms of the Mortgage, including the form provision which allows

the lender to, in certain situations, take actions reasonable and appropriate to protect its interest in the Property.

162. CitiMortgage's conduct in this action was neither reasonable nor appropriate.

163. CitiMortgage breached its duty to Plaintiff under the Mortgage by instructing Safeguard to secure the Property, despite being provided with notice that the Property was occupied.

164. Plaintiff suffered economic damages as a proximate result of Citi's conduct including, without limitation: causing him to expend funds to repair damage caused by CitiMortgage and/or Safeguard, additional and unnecessary fees to his mortgage balance, and incurring attorney's fees.

165. Plaintiff suffered and continues to suffer non-economic damages as a proximate result of Citi's conduct including, without limitation: fear of further break-ins and damage to his real and personal property, fear of harm to his girlfriend and her daughter, anxiety, stress, lack of sleep, and an inability to focus.

**WHEREFORE**, Plaintiff prays for relief against Defendant CitiMortgage, Inc. as follows:

A.   For actual damages;

B.   For attorney's fees and costs of suit; and

C.   For such other and further relief as this Court deems just and proper.

41

**COUNT NINE**
**(Breach of the Implied Covenant of Good Faith**
**and Fair Dealing as to CitiMortgage)**

166. Plaintiff restates and incorporates by reference each of the statements and allegations contained in the preceding paragraphs in their entirety.

167. The Mortgage imposed a duty of good faith and fair dealing on CitiMortgage, as successor by merger to ABN.

168. CitiMortgage's conduct in this action was neither reasonable nor appropriate.

169. CitiMortgage breached its duty to Plaintiff under the Mortgage by instructing Safeguard to secure the Property, despite being provided with notice that the Property was occupied.

170. Plaintiff suffered economic damages as a proximate result of CitiMortgage's conduct including, without limitation: causing him to expend funds to repair damage caused by CitiMortgage and/or Safeguard, additional and unnecessary fees to his mortgage balance, and incurring attorney's fees.

171. Plaintiff suffered and continues to suffer non-economic damages as a proximate result of CitiMortgage's conduct including, without limitation: fear of further break-ins and damage to his real and personal property, fear of harm to his girlfriend and her daughter, anxiety, stress, lack of sleep, and an inability to focus.

**WHEREFORE,** Plaintiff prays for relief against Defendant CitiMortgage, Inc. as follows:

A.   For actual damages;

B.   For attorney's fees and costs of suit; and

C.   For such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Bruce H. Levitt
Bruce H. Levitt
**LEVITT & SLAFKES, P.C.**
515 Valley Street
Suite 140
Maplewood, NJ 07040
(973) 313-1200
(973) 313-1240 FAX
blevitt@lsbankruptcylaw.com
*Attorneys for Plaintiff*

Dated: June 12, 2018

Jury Demand

Plaintiff George Makhoul hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Bruce H. Levitt
Bruce H. Levitt
**LEVITT & SLAFKES, P.C.**
*Attorneys for Plaintiff*

Dated: June 12, 2018